FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

03 AUG -8 PM 3: 47

U.S. DISTRICT COURT
N.D. OF ALABAMA

JOHN E. CORBETT        )
                       )
   **Plaintiff,**    )
                       )
   **vs.**           )        **Case No. CV 01-BE-1717-NE**
                       )
DONALD H. RUMSFELD,    )
**Secretary, Department of Defense,**  )
                       )        **ENTERED** *pc*
   **Defendant.**    )
                                        AUG - 8 2003

## MEMORANDUM OPINION

This case is before the court on Defendant's Motion to Dismiss or, in the Alterative, for

Summary Judgment (Doc. 27).  The court held a hearing on this motion on March 21, 2003.  The

court, having considered the briefs and evidentiary submissions and having heard oral argument

on this motion, finds that Defendant's Motion to Dismiss or, in the Alterative, for Summary

Judgment (Doc. 27) is due to be GRANTED in its entirety for reasons stated on the Record and

below.

## I.        SUMMARY OF FACTS [1,2]

---

[1]  The facts set out below are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See* Information Sys. & Network Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See* Cox v. Adm'r U.S. Steel & Carnegie Pension Fund, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2]  The court notes that Plaintiff did not directly respond to Defendant's Summary of Material Facts as required by this court's Exhibit A to the Scheduling Order (Doc. 20).  Instead, Plaintiff made unsupported statements and references to various exhibits, many of which are varying accounts of Plaintiff's version of events.

*43*

Plaintiff worked at the Missile and Space Intelligence Center (MSIC), at the time part of the Department of the Army, from June 9, 1981, until his termination on January 16, 1987. He initially worked as an Intelligence Research Specialist, GS-132-02. The MSIC promoted him to Intelligence Research Specialist, GS-132-09, on August 15, 1982.

At first, Plaintiff worked in the MSIC's Advanced Sensors Directorate under the supervision of Harold Harris, an African-American male. Plaintiff's job required him to work with systems analysts in the collection of classified Foreign Intelligence Signals (FIS). He sent computerized orders for FIS data to the National Security Agency (NSA) located in Fort Meade, Maryland. The Defense Intelligence Agency (DIA) monitored the NSA's ability to provide requested information.

Plaintiff filed a discrimination complaint with the EEO office after he became dissatisfied with Mr. Harris' supervision of him. The Army resolved Plaintiff's administrative EEO complaint by approving Plaintiff's request for transfer to another section in February, 1985. The MSIC transferred him to MSIC's Collection Requirements Branch, where he worked under the supervision of Branch Chief James Asquith and Group Leader James Flanagan, both of whom are white males.

Shortly after Plaintiff was transferred, Mr. Asquith began receiving complaints that Plaintiff was making excessive errors. Because Plaintiff was new to his position, Mr. Asquith took no action other than to inform Plaintiff that he was making errors and asked Plaintiff to make the necessary corrections. Nevertheless, Plaintiff's errors continued.

Because his job required him to send his own corrected messages, Plaintiff was aware of his performance errors. Further, Mr. Flanagan counseled Plaintiff on his errors, and Plaintiff attended meetings designed to discuss his errors with Mr. Asquith and Dr. Price, the Division

2

Chief.  Despite receiving repeated warnings, Plaintiff continued to make errors, which resulted in notification from the DIA that the NSA could not fulfill requests from Plaintiff due to excessive errors.

In June, 1985,  Jenny Marine, GS-7 Intelligence Aide, went on extended leave because of surgery, leaving Plaintiff's section short-staffed.  As a result of Ms. Marine's absence, Plaintiff, Mr. Flanagan, and other employees shared Ms. Marine's duties.  From September to November, 1985, Plaintiff began refusing to do not only the work previously done by Ms. Marine but also ceased doing a lot of his own work, claiming he was only assigned to do clerical work, including signing for classified documents, filing documents, and opening a safe.  Plaintiff stated: "I decided that it would be best for me to not continue to perform the clerk's duties and to concentrate on my own.  In the next couple of months, Flanagan continued to place the clerk's duties on my desk and I ignored them."  Plaintiff further stated: "I will not do any duties that will not merit me for advancement out of job no.33,764."   On one occasion in February, 1986, Plaintiff refused to open a safe and code forms when told to by Mr. Flanagan.  Plaintiff testified he refused to perform certain duties requested by Mr. Flanagan despite being previously counseled by Asquith that he needed to perform any duties assigned by Mr. Flanagan.

Mr. Flanagan reported Plaintiff's refusal to do work to Mr. Asquith.  When Plaintiff learned Mr. Flanagan had discussed the situation with Mr. Asquith, Plaintiff invited him to the parking lot where both exchanged curse words and Plaintiff threatened Mr. Flanagan.  In January 1986, MISC issued Plaintiff a letter of reprimand for disobeying Mr. Flanagan's order to open a safe and code forms.

On or about March 26, 1986, Maj. Ronald Love of the MSIC contacted Mr. Asquith "...in

3

an effort to curtail what [had] become a significant problem...over the last six to nine months..."
at the NSA.  Maj. Love indicated that Plaintiff did not properly use the computer system
designed to transmit data requests.  In response to the NSA's complaints, Plaintiff, on March 27,
1986, sent a letter, on MSIC letterhead, to the NSA and responded to the allegations.  The Army
suspended Plaintiff for three days for unauthorized use of government property and for failing to
follow established procedures for approval of outgoing correspondence.

On September 3, 1986, Mr. Asquith prepared a Proposed Disciplinary Action for Plaintiff
that listed occurrences that later became part of the reasons for Plaintiff's termination.  When
Plaintiff confronted Mr. Asquith, on October 1, 1986, about the listed occurrences, Plaintiff took
a blocking stance, crossed his forearms, and prevented Mr. Asquith from leaving the area.  When
Mr. Asquith yelled for help, Plaintiff ceased his behavior.  Two days later, Plaintiff attempted to
contact an EEO counselor.  However, Plaintiff did not meet with an EEO counselor until
November 19, 1986, because he requested a particular EEO Counselor who was not then
available.

On December 11, 1986, Mr. Asquith proposed to remove Plaintiff for falsifying a safe
and cabinet security record, DA Form 672, for submitting false information to a grievance
investigator conducting an official investigation, and for creating a disturbance.  The removal
letter that followed, dated January 15, 1987, advised Plaintiff of his right to grieve the action
taken against him under the Department of Army grievance procedure.   On the same day,
Plaintiff received his final interview with the EEO Counselor concerning his October 3, 1986
informal complaint.  One day later, on January 16, 1987, Plaintiff was removed from federal
service.

4

By letter dated January 27, 1988, Plaintiff filed a grievance[3] over his removal from federal service. On January 30, 1987, Plaintiff filed a formal administrative complaint that alleged that, based on his race (African-American) and sex (male): 1) an August 26, 1986 report Plaintiff prepared was given to another employee for the correction of errors and Plaintiff was not informed; 2) information regarding errors on his data requests to the National Security Agency was withheld from him; and 3) he was not informed of or instructed on the major elements of his job performance from January 1, 1986 through December 31, 1986.

On February 20, 1987, the U.S. Army Civilian Appellate Review Agency (USACARA) appointed Mr. Jim Biggs to investigate the January 27, 1987 grievance. Plaintiff wrote a letter to Mr. Biggs on March 9, 1987, stating that his removal was based on "race and sex." On March 19, 1987, USACARA notified Plaintiff that he should contact the EEO office about his claim of discrimination. USACARA advised Plaintiff his grievance would be held in abeyance until a determination was made on his discrimination allegations.

On February 3, 1987, the Army issued a Final Agency Decision (FAD1), rejecting Plaintiff's January 30, 1987 formal administrative complaint because Plaintiff failed to timely contact an EEO counselor. On February 10, 1987, Plaintiff appealed the FAD1 to the Office of Federal Operations (OFC) of the Equal Employment Opportunity Commission (EEOC).

On July 8, 1987, the EEOC OFO issued a decision finding that the Army failed to comply with its obligations to assist Plaintiff in the clarification and articulation of his allegations during

---

[3]Regulation 690-20 requires the grievance process be initiated by submitting the grievance in writing through supervisory channels such as the MSIC Director. Allegations of race and sex discrimination cannot be processed under the grievance policy but only through the EEO administrative procedure.

EEO counseling. The EEOC OFO vacated the Army's FAD1 and remanded Plaintiff's complaint to the Army for further action. On remand, the Army gave Plaintiff additional counseling. An addendum to the revised EEO counselor's report indicated that several witnesses were interviewed regarding Plaintiff's allegations and that a reprimand, a three-day suspension, and a notice of removal of Plaintiff were among the subjects discussed. The addendum indicated that, on August 20, 1987, Plaintiff provided a historical summary of events to the EEO counselor.

On August 6, 1987, Plaintiff contacted an EEO counselor alleging that, because of his race and sex, the Army mishandled his January 1987 complaint. The EEO counselor's report listed the allegations as follows: 1) an unusually long delay in obtaining an EEO counselor (October 3 to November 19, 1986); 2) the EEO counselor failed to cover areas concerning the adverse actions Plaintiff received and failed to speak with all witnesses named by Plaintiff; and 3) the EEO Office failed to send Plaintiff a copy of the EEO counselor's report.

Plaintiff, on September 28, 1987, filed a second formal complaint containing his new allegations concerning the EEO office's mishandling of his original administrative complaint. On February 8, 1989, the Army issued a second final agency decision (FAD2), finding no discrimination regarding the following allegations: 1) Plaintiff was held accountable for errors in reports that were not made known to him; 2) other employees were allowed to correct his work without his knowledge; 3) he was not informed about, nor was he provided instruction on specific duties related to his job; 4) he was not informed of the major elements of his performance standards; and 5) his complaint was not properly processed.

Plaintiff appealed the Army's FAD2 to the EEO OFO on February 20, 1989. On appeal,

Plaintiff asserted that his most important allegation concerning his termination was never accepted by the Army's EEO office. Plaintiff claimed that the EEO counselor told him that her office could not do anything about the removal. Plaintiff further stated that the EEO counselor told him that all statements taken during the intake interview would be addressed as part of his complaint and investigated. Plaintiff asserted that the statements he gave to the EEO counselor addressed specific allegations of mistreatment in the office, disciplinary actions he received, promotions he was denied, and his termination from the Army.

The EEOC issued a decision on January 31, 1992, affirming the Army's FAD2 finding of no discrimination regarding the five allegations it had addressed. As to Plaintiff's allegation that the Army improperly failed to address his termination, the EEOC found that the Army was not obligated to address this allegation because it was not contained in Plaintiff's formal complaint, or in the addendum to that formal complaint, or in the second formal complaint.

On February 20, 1992, Plaintiff asked the EEOC to reopen and reconsider its decision dated January 31, 1992. In his request, Plaintiff asserted that the EEO counselor told him she could not accept his termination as part of his complaint. Plaintiff also asserted that, during the time that the initial EEO counselor was preparing the EEO counselor's report, the Army withheld the information that it had proposed his termination. Finally, Plaintiff alleged that the "adverse actions" that the EEO counselor had improperly failed to cover were his written reprimand, his three-day suspension, and his termination.

The EEOC OFO, on July 16, 1992, granted Plaintiff's request for reconsideration and directed the Army to determine if issues raised by Plaintiff were continuing violations. On August 23, 1993, the Army issued a third Final Agency Decision (FAD3), finding no

discrimination. Almost one year later, on June 24, 1994, the EEOC vacated the Army's FAD3 and remanded the case back to the Army for further investigation of the allegations.

On January 10, 1995, Plaintiff sent a letter to the Army adding "reprisal" as an additional basis for his complaint. The Office of Complaint Investigation (OCI)[4], on April 21, 1995, found no discrimination or reprisal on the nine issues addressed in the investigation. On May 11, 1995, the Army notified the EEOC of Plaintiff's request for a hearing. Plaintiff, on December 16, 1997, requested a FAD from the Army and the right to proceed to federal court.

On February 18, 1998, the Army issued another Final Agency Decision (FAD4), finding no evidence to support the allegations of discrimination on the nine issues alleged. Plaintiff appealed the FAD4 to the EEOC OFO on March 9, 1998. On January 19, 2001, the EEOC OFO issued a decision affirming the Army's FAD4. Plaintiff's request for reconsideration by the EEOC OFO was denied on June 29, 2001.

On April 10, 2002, Plaintiff filed a Complaint (Doc. 1) alleging race and sex discrimination as well as various other constitutional and statutory violations. This court, by order dated March 27, 2002 (Doc. 6), required Plaintiff to amend his complaint. The court notes that Plaintiff has proceeded throughout this case *pro se*, and that every benefit of every doubt has been given to Plaintiff in this court's attempt to decipher his allegations in his complaint. During his deposition, however, Plaintiff stated that his Complaint consists of the following two issues: 1) his removal from federal service; and 2) improper actions taken by the EEO office. Specifically, Plaintiff argued that a substantial delay in getting a counselor transpired; the EEO counselor failed to cover certain areas; and the EEO counselor allegedly failed to talk to

---

[4]The OCI is the Army's investigative agency for EEO complaints.

witnesses.

## II.   DEFENDANT'S MOTION TO DISMISS (Doc. 27-1)

Defendant filed a Motion to Dismiss or, In the Alternative, For Summary Judgment (Doc. 27), arguing that Plaintiff failed to state a claim under the United States Constitution and under 42 U.S.C. §§ 1981, 1983, and 1985, and that Plaintiff's claims concerning his removal and retaliation are untimely.  For reasons stated below and elaborated on in the Record, this court finds that Defendant's Motion to Dismiss (Doc. 27-1) is due to be GRANTED.

### A.   Motion to Dismiss Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint because the plaintiff has failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume for purposes of this motion that all the factual allegations set forth in the complaint are true.  *See* United States v. Gaubert, 499 U.S. 315, 327 (1991); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990).  Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff.  *See* Brower v. County of Inyo, 489 U.S. 593, 598 (1989).  "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief."  In re Johannessen, 76 F. 3d 347, 349 (11th Cir. 1996) (*citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

### B.   Plaintiff's Claims

#### 1.   Plaintiff's Claims Asserting Violations of the United States Constitution

9

In his Complaint, Plaintiff stated that "[j]urisdiction of this Court is invoked pursuant to...the Fifth Amendment to the United Stated Constitution." Defendant, in its Motion to Dismiss (Doc. 27-1), asserted that Plaintiff cannot bring a constitutional claim against it because Title VII affords Plaintiff an exclusive remedy for claims of discrimination in federal employment. Plaintiff, in his Opposition to Defendant's Motion to Dismiss (Doc. 31), apparently concedes that his constitutional claims should be dismissed. Further, at the March 21, 2003, hearing, Plaintiff did not contest this court's dismissal of his constitutional claims. For reasons stated on the Record in open court, this court hereby GRANTS Defendant's Motion to Dismiss on Plaintiff's constitutional claims and hereby DISMISSES Plaintiff's allegations of constitutional violations under the Fifth Amendment of the United States Constitution.

### 2. Plaintiff's Claims Asserting Violations of 42 U.S.C. § 1981, § 1983, and § 1985

### A. Plaintiff's § 1981 Claim

Plaintiff, in his Complaint, attempts to state a claim under 42 U.S.C. § 1981. Defendant argued before this court that Plaintiff's § 1981 claim should be dismissed because Title VII is Plaintiff's exclusive remedy in this case. In Canino v. E.E.O.C., 707 F.2d 468, 472 (11th Cir. 1983), the court stated that the plaintiff's § 1981 claim was properly dismissed because Title VII provides an exclusive judicial remedy for alleged employment discrimination for federal employees. *See also* Lee v. Hughes, 145 F.3d 1272, 1277 (11th Cir. 1998)(holding that "[s]ection 1981 provides a cause of action for individuals subjected to discrimination by private actors and discrimination under color of state law, but does not provide a cause of action for discrimination under federal law."). Based upon Canino and upon Plaintiff's concession that his § 1981 claim is

due to be dismissed in his written submission and at the March 21, 2003, hearing, this court

hereby GRANTS Defendant's Motion to Dismiss on Plaintiff's claim under § 1981 and hereby

DISMISSES Plaintiff's § 1981 claim.

### B.    Plaintiff's § 1983 Claim

In addition to his § 1981 claim, Plaintiff attempted to state a § 1983 claim in his

Complaint.  Defendant, once again, argued that Title VII is Plaintiff's exclusive remedy for a

federal employee's claims of discrimination.  This court recognizes that § 1983 only authorizes

suits against state and local officers.  Therefore, § 1983 has no application in Plaintiff's case

because Plaintiff has stated a § 1983 claim against a *federal* officer.  *See* Mays v. United States

Postal Service, 928 F. Supp. 1552, 1557 n.4 (M.D. Ala. 1996).  Further, Plaintiff conceded in his

Opposition to Defendant's Motion to Dismiss and at the March 21, 2003 hearing that his claims

are brought solely under Title VII.  The court hereby GRANTS Defendant's Motion to Dismiss

on Plaintiff's claim under § 1983 and hereby DISMISSES Plaintiff's § 1983 claim.

### C.    Plaintiff's § 1985 Claim

Plaintiff has also attempted to state a claim under § 1985.  Section 1985 prohibits

conspiracy to deprive a person of rights created elsewhere, but essentially creates no substantive

rights.  *See* Mays, 928 F. Supp. at 1561 (*citing* United States v. Guest, 383 U.S. 745 (1966)).  In

Great American Fed. Sav. & Loan Assoc. v. Novotny, 442 U.S. 366, 378 (1979), the Supreme

Court held that § 1985 could not be used to redress violations of Title VII.  The Court explained

that, if a plaintiff had § 1985 available, the plaintiff "could completely bypass the administrative

process, which plays such a crucial role in the scheme established by Congress in Title VII,"

among other things.  Novotny, 442 U.S. at 376.  In light of the applicable case law and Plaintiff's

11

concession that his claims under § 1985 should be dismissed, this court hereby GRANTS

Defendant's Motion to Dismiss on Plaintiff's claim under § 1985 and hereby DISMISSES

Plaintiff's § 1985 claim.

### 3.    Plaintiff's Claims Concerning Removal and Retaliation

### A.    Plaintiff's Removal Claim

At the March 21, 2003, hearing, this court found, for reasons stated in the Record, that

Plaintiff failed to timely raise his allegation of removal from federal service in the administrative

EEO process because Plaintiff did not file a formal complaint within fifteen days of his notice of

final interview concerning his removal from federal service. Accordingly, this court finds that

Plaintiff's allegations of discrimination in his removal are due to be DISMISSED.

A federal employee must timely exhaust administrative remedies for any claim of

employment discrimination before filing suit in District Court under Title VII. *See* Brown v.

General Serv. Admin., 425 U.S. 820, 833 (1976). The required administrative procedures for

federal employees alleging discrimination or reprisal were found at 29 C.F.R. §§ 1613.210 *et*

*seq.*[5] At the time, a federal employee who believed he or she had been the subject of prohibited

employment discrimination or retaliation had to contact an EEO counselor within thirty calendar

days of the alleged discriminatory event. 29 C.F.R. §§ 1613.213(a), 1613.214(a)(1)(i). After an

---

[5] In 1991, 29 C.F.R. §§ 1614.101-.607 changed the time limit for the initiation of contact with an EEO counselor and the filing of a formal EEO complaint. To initiate processing of a particular claim, an aggrieved federal employee must now consult with an EEO counselor within forty-five days of the alleged discriminatory event, or within forty-five days of the date that the employee knew or reasonably should have known of the discriminatory action. 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved by informal pre-complaint counseling, the agency must provide the employee with notice of the right to file a formal complaint of discrimination. 29 C.F.R. § 1614.105(d). After receipt of notice, the employee has fifteen days to file the formal complaint. 29 C.F.R. § 1614.106(b).

informal investigation, the EEO counselor notified a plaintiff of his right to file a complaint of discrimination with an agency official.  The employee had to submit a formal complaint of discrimination in writing, signed by the complainant or his representative, to the agency within fifteen calendar days after the employee's receipt of the notice of right to file a complaint.  29 C.F.R. §§  1613.213(a), 1613.214(a)(1)(ii).

The EEOC rules are not mere technicalities, but integral parts of Congress' statutory scheme of achieving a "careful blend of administrative and judicial enforcement powers." Brown, 425 U.S. at 833.  If an employee fails to timely file an administrative complaint, then the employee has failed to exhaust his administrative remedies, and the claim should be dismissed. The Supreme Court has repeatedly upheld dismissal or summary judgment in cases where a plaintiff has failed to timely or properly exhaust an administrative discrimination complaint. *See, e.g.,* Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147 (1984); Delaware State College v. Ricks, 449 U.S. 250 (1980); United Air Lines v. Evans, 431 U.S. 553 (1977).  Further, the Eleventh Circuit has held that a federal employee's unexcused failure to timely initiate an administrative discrimination complaint results in summary judgment or dismissal of the suit for failure to state a claim upon which relief may be granted. *See* Manning v. Carlin, 786 F.2d 1108, 1109 (11th Cir. 1986).

On December 11, 1986, MISC proposed to remove Plaintiff for falsifying a safe and cabinet security record DA Form 672, for submitting false information to a grievance investigator conducting an official investigation, and for creating a disturbance.  On January 15, 1987, Plaintiff received his final interview with the EEO Counselor for his first complaint of

discrimination involving allegations unrelated to the removal.[6]  On January 16, 1987, Plaintiff

received a letter notifying him that he was being removed from federal service.

On January 27, 1987, Plaintiff, by letter, filed a grievance over his removal. Civilian

employees may elect to pursue adverse employment decisions through the United States Army

Civilian Appellate Review Agency (USACARA) or the EEO administrative process. (AR690-70,

paragraph 1-8C and Collective Bargaining Agreement.)[7]  On January 30, 1987, Plaintiff filed

another formal administrative EEO complaint in which he alleged that based on his race

(African-American) and sex (male): (1) an August 26, 1986 report Plaintiff prepared was given

to another employee for the correction of errors and Plaintiff was not informed; (2) information

regarding errors on his data requests to the National Security Agency was withheld from him;

and (3) he was not informed of or instructed on the major elements of his job performance from

January 1, 1986 through December 31, 1986.  Plaintiff never raised nor mentioned his removal in

either of his formal EEO complaints of discrimination.

Plaintiff first raised EEO allegations concerning his removal from federal service  when

_____

[6]  As noted above, Plaintiff contacted an EEO counselor for these allegations in October 1986.

[7]AR 690-70, paragraph 1-8c states:
Matters that can be appealed to the MSPB or are subject to final administrative review by the
OPM or the EEOC may not be grieved . . .  Whenever an employee files a formal grievance
that duplicates matters under consideration by another authority (e.g. MSPB or the Special
Counsel) or contains issues that will be considered by another authority while ruling on a
matter before it, the grievance will be canceled.  After the decision by the other authority, any
remaining grievable issues may be presented as a formal grievance within 15 days after the
grievant receives the decision. *DEX 49, Army Regulation 690-70*

Employees being given a suspension of more than 14 days or removed from the Federal
Service are entitled to appeal to the Merit Systems Protection Board or may file a grievance
under the negotiated grievance procedure contained in this Agreement, but not both.
Employees cannot file an appeal, grievance, EEO complaint, or prohibited personnel practice
on the same action.

*DEX38, Collective Bargaining Agreement, June 19, 1981.*

he sent a letter to Jim Biggs, the individual investigating his grievance, claiming that his removal was based on his race and sex.   On March 19, 1987, USACARA  notified Plaintiff that he should contact the EEO office about his claim of discrimination.  When Plaintiff contacted the EEO office, it immediately began investigating his claim. This court finds, as elaborated on in the Record, that Plaintiff's letter to Mr. Biggs was sufficient to start the EEO process.  Further, the court finds that Plaintiff timely contacted the EEO office after being advised to do so by the USACARA.  Therefore, the court finds that Plaintiff met the 30 day requirement within which to notify an EEO counselor that he wished to make a claim of discrimination.

Even though this court found that Plaintiff  timely contacted an EEO counselor, the court nevertheless finds that Plaintiff failed to file a formal complaint within fifteen days of the EEO office's notifying him of his right to file a formal EEO complaint.  On March 9, 1987, Plaintiff wrote a letter to Mr. Biggs stating that his removal was based on "race and sex."  On April 17, 1987, Plaintiff received notice of his final counseling interview.  This notice advised Plaintiff he had fifteen days to file a formal complaint of discrimination.  Plaintiff acknowledged receipt of this notice.  On May 5, 1987, the EEO office notified Plaintiff that his EEO case was closed because fifteen days had passed and he had not filed a formal EEO complaint.  Because Plaintiff failed to file a formal complaint of discrimination within fifteen days of his notice of right to file and because this court, as elaborated on in the Record, finds that no justification for equitable tolling of the EEO administrative process exists, the court finds that Defendant's Motion to Dismiss (Doc. 27-1) is hereby GRANTED on Plaintiff's removal claims and that Plaintiff's removal claims are hereby DISMISSED.

**B.      Plaintiff's Retaliation Claim**

15

At the March 21, 2003, hearing, the court also found that Plaintiff's retaliation claim is due to be DISMISSED because Plaintiff failed to timely raise his retaliation claim with an EEO counselor within thirty days of the alleged retaliatory event. Plaintiff initially raised race and gender as his claimed discriminatory bases in his administrative complaints. His removal from service was not raised in either of the complaints. Further, Plaintiff did not raise a retaliation claim. But, in January 1995, almost eight years after Plaintiff left the Army's employment, Plaintiff sent a letter to the Army adding "reprisal" as an additional bases for his complaint. Plaintiff exceeded the thirty (30) day time limit to raise allegations of reprisal in his termination by several years.

The scope of a civil complaint is limited to the scope of the EEOC investigation that can be expected to grow out of allegations of discrimination. *See* Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir. 1985) (holding judicial complaint in a Title VII action is limited to the scope of the administrative investigation that could reasonably be expected to grow out of the charge of discrimination). Allegations that do not amplify, clarify, or more clearly focus earlier EEOC complaints cannot be brought in a judicial complaint. *See* Wu v. Thomas, 863 F.2d 1543, 1547, (11th Cir. 1989).

Plaintiff's allegation concerning retaliation in the instant judicial complaint is unrelated to the allegations contained in Plaintiff's formal administrative complaints. This court will not allow Plaintiff over eight years after he filed his initial EEO complaint to state an additional bases for complaint based on the same facts. A "'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Alexander v. Fulton County, GA, 207 F.3d 1303, 1332 (11th Cir. 2000)(*quoting*

16

Mulhall v. Advance Security, Inc., 19 F.3d 586, 589 n.8 (11th Cir. 1994)).  In this case, Plaintiff

alleges no new facts to allow an eight- year-late retaliation claim other than the allegations

contained in his initial EEO complaint.

As elaborated on in the Record, this court finds that Plaintiff's retaliation allegation is

hereby DISMISSED as untimely because it was filed several years after the allegedly

discriminatory conduct and it does not, as a matter of law, relate back to Plaintiff's original

complaints concerning his removal.  Therefore, Defendant's Motion to Dismiss (Doc. 27-1) is

hereby GRANTED on Plaintiff's removal claim.

### C.      Plaintiff's Claims Regarding the EEO Process

To the extent that Plaintiff attempts to base any cause of action on alleged flaws in the

EEO procedure and the processing of his complaints, the court finds that Plaintiff's allegations in

this regard are not violations for which Plaintiff may receive redress by this court.  For example,

Plaintiff's Complaint lists allegations such as delay in getting an EEO counselor and the EEO

counselor's failure to cover certain areas and talk with some designated witnesses.   The court

finds that, as a matter of law, deficiencies in the EEO process do not amount to an adverse

personnel action for which Plaintiff may recover under Title VII because the deficiencies do not

impact the terms and conditions of Plaintiff's employment.  An alleged failure to properly

process an EEO claim is not actionable under Title VII.  Storey v. Rubin, 976 F. Supp 1478,

1483-84 (N.D. Ga. 1997), aff'd, 144 F.3d. 56 (11th Cir. 1998) (table) (no implied remedy to

challenge an agency's handling of a charge against the employer); Malladi v. Brown, 987 F.

Supp. 893, 918 (M.D.Ala. 1997) (holding allegation of unreasonable delay in responding to her

written request for an EEO counselor's report and the inappropriate referral of her charges to the

17

VA central office for procedural review did not amount to an adverse job action because there has been no showing of how these actions affected the terms and conditions of Plaintiff's employment).  Therefore, the court hereby GRANTS Defendant's Motion to Dismiss (Doc. 27-1) and DISMISSES any claims relating to Plaintiff's allegations of deficiencies in the EEO process.

### III.    Defendant's Alternative Motion for Summary Judgment (Doc. 27-2)

Defendant filed, in the alternative to a Motion to Dismiss (Doc. 27-1), a Motion for Summary Judgment (Doc. 27-2), alleging that Plaintiff cannot establish a *prima facie* case of discrimination and that Plaintiff cannot show that Defendant's articulated legitimate, non-discriminatory reasons for Plaintiff's removal were pretext for discrimination.  Although this court granted Defendant's Motion to Dismiss (Doc. 27-1) as stated above and on the Record at the March 21, 2003 hearing, this court finds that Defendant's Motion for Summary Judgment (Doc. 27-2) is due to be GRANTED in its entirety.

### A.    Summary Judgment Standard of Review

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact are presented and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The fact that the parties do not agree on each and every fact is not significant; the law requires only that "there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  *See also* Celotex v. Catrett, 477 U.S. 317, 327 (1986).  A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 251-52.  Mere speculation is insufficient to create an issue of fact and defeat a properly-supported motion for summary judgment.  *See* Ramsey v. Leath, 706 F.2d 1166, 1169-70 (11th

18

Cir. 1983). However, all reasonable doubts about the facts should be resolved in favor of the

non-movant. *See* Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11ᵗʰ Cir. 1990)(*citing*

Anderson, 477 U.S. at 252).

### B.     Plaintiff's Claims[8]

#### 1.     Plaintiff's *Prima Facie* Case

To establish a *prima facie* case of disparate treatment race discrimination based on

circumstantial evidence,[9] Plaintiff must show: (1) he is a member of a protected class, (2) he

suffered an adverse employment action, (3) Defendant treated similarly-situated white employees

more favorably, and (4) he was qualified to do the job. *See* Scott v. Suncoast Beverage Sales,

LTD, 295 F.3d 1223, 1228 (11ᵗʰ Cir. 2002). The court, in an effort to provide Plaintiff with every

possible benefit of every possible doubt, assumed for purposes of argument at the March 21,

2003, hearing that Plaintiff met his burden of establishing a *prima facie* case. The court notes,

however, that Defendant's argument that Plaintiff has not met his burden of establishing a *prima*

*facie* case is a strong argument, and that Plaintiff, as elaborated on below, has not presented

admissible evidence to support his *prima facie* case.

#### 2.     Defendant's Articulated Legitimate, Non-Discriminatory Reason

Because this court accepts, for purposes of argument, that Plaintiff met his burden of

establishing a *prima facie* case, Defendant must then articulate a legitimate, nondiscriminatory

---

[8] In both parties' submissions, they failed to brief Plaintiff's retaliation claim in the
context of summary judgment. Because this court granted Defendant's Motion to Dismiss (Doc.
27-1) on Plaintiff's retaliation claim, this court will refrain from constructing arguments for the
parties on the retaliation claim under a summary judgment standard.

[9] Plaintiff does not contend that he has presented "direct evidence" in support of his
claims of race discrimination, nor can he.

reason for its adverse employment action. *See* <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). Defendant asserts that it had several legitimate nondiscriminatory reasons for removing Plaintiff from his position, all of which were related to Plaintiff's conduct.

Plaintiff's job required him to work with systems analysts in the collection of classified Foreign Intelligence Signals (FIS). Shortly after Plaintiff assumed his job, Mr. Asquith, his supervisor, began to receive complaints that Plaintiff was making excessive errors. Because Plaintiff had just started in the job, Mr. Asquith took no action other than to inform Plaintiff of the errors and request him to make necessary corrections. The errors continued, however, and Plaintiff committed repetitive errors in may instances. Plaintiff knew of his performance errors because his job required him to send corrected messages, Mr. Flanagan counseled him on the errors, and because Plaintiff attended meetings with Mr. Asquith and Dr. Price, the Division Chief, where they discussed his performance errors. In spite of repeated warnings, Plaintiff continued to make errors resulting in notification from the DIA that NSA could not fulfill requests from Plaintiff due to excessive errors.

On or about March 26, 1986, MAJ Ronald Love, MSIC, contacted Mr. Asquith ". . . in an effort to curtail a significant problem . . . over the last six to nine months . . ." at NSA. In the memorandum, MAJ Love stated that Plaintiff did not properly use a computer system designed in part to transmit data requests. MAJ Love also listed other numerous errors made by Plaintiff, including typographical errors.

In response to the complaints by NSA, Plaintiff sent a letter, under MSIC letterhead, to the NSA responding to the error allegations. Plaintiff's letter stated it was sent ". . . to try and acquit me of these charges stating that I am the culprit" and expressing his "hope that you can

assure me a fair trial in the future before I am hung."   NSA returned the Plaintiff's letter to MSIC.  Plaintiff's supervisors did not authorize Plaintiff to send the letter to an outside organization so he was charged with misuse of government property and failure to follow proper signature authority.  On July 22, 1986, Plaintiff received a three-day suspension for this incident.

In June, 1985,  Jenny Marine, GS-7 Intelligence Aide, went on extended leave because of surgery, leaving Plaintiff's section short-staffed.  As a result of Ms. Marine's absence, Plaintiff, Mr. Flanagan, and other employees shared Ms. Marine's duties.  From September to November, 1985, Plaintiff began refusing to do not only the work previously done by Ms. Marine but also ceased doing a lot of his own work, claiming he was only assigned to do clerical work, including signing for classified documents, filing documents, and opening a safe.  Plaintiff stated: "I decided that it would be best for me to not continue to perform the clerk's duties and to concentrate on my own.  In the next couple of months, Flanagan continued to place the clerk's duties on my desk and I ignored them."  Plaintiff further stated: "I will not do any duties that will not merit me for advancement out of job no.33,764."   On one occasion in February, 1986, Plaintiff refused to open a safe and code forms when told to by Mr. Flanagan.  Plaintiff testified he refused to perform certain duties requested by Mr. Flanagan despite being previously counseled by Asquith that he needed to perform any duties assigned by Mr. Flanagan.

Mr. Flanagan reported Plaintiff's refusal to do work to Mr. Asquith.  When Plaintiff learned Mr. Flanagan had discussed the situation with Mr. Asquith, Plaintiff invited him to the parking lot where both exchanged curse words and Plaintiff threatened Mr. Flanagan.  In January 1986, MISC issued Plaintiff a letter of reprimand for disobeying Mr. Flanagan's order to open a safe and code forms.

On or about September 30, 1986, Mr. Asquith issued Plaintiff a notice of proposed

suspension for 10 workdays for falsifying a safe and cabinet security record, which Plaintiff

submitted to an investigator conducting an official grievance investigation.  Plaintiff admitted

that he created a document he labeled "original" and forwarded it to the grievance investigator.

MSIC withdrew the proposed suspension after Plaintiff confronted Mr. Asquith on October 1,

1986 in a hostile and belligerent manner and blocked Mr. Asquith with his forearms to prevent

Mr. Asquith from leaving a room.   Although Plaintiff denies he forcibly detained Mr. Asquith,

Plaintiff admits he stood in the doorway blocking Mr. Asquith's exit, had an argument with Mr.

Asquith, raised his voice to a level not normal in the workplace, and that Mr. Asquith yelled for

help, causing others in the workplace to run over and intervene.  This incident was one of three

which led to the proposal for Plaintiff's dismissal from federal service. As a result of Plaintiff's

behavioral history, this court finds that Defendant has met its burden of producing legitimate

reasons for removing Plaintiff from federal service.

### 3.      Plaintiff's Showing of Pretext

This court, at the March 21, 2003 hearing, found that Defendant articulated legitimate,

non-discriminatory reasons for removing Plaintiff from federal service.  As a result of this

finding, the court then asked Plaintiff to show that Defendant's reasons were pretext for

discrimination.  Plaintiff could have satisfied his burden of persuasion by showing the court "that

a discriminatory reason more than likely motivated the employer...[or] by persuading the court

that the proffered reason for the employment decision is not worthy of belief." Hall v. Alabama

Assoc. of Sch. Bds., 326 F.3d 1157, 1166 (11th Cir. 2003).  This court found that Plaintiff failed

to make any showing that Defendant was either motivated by race or that any of Defendant's

reasons for removing Plaintiff were pretext for discrimination.

First, the court finds that Plaintiff offered no evidence that Defendant's actions were motivated by unlawful animus. Plaintiff, by his own testimony, admits he never heard Mr. Asquith or Mr. Flanagan, his supervisors, make a racist comment. Mr. Flanagan testified neither race, sex, nor reprisal for protected activity played any part in the disciplinary actions taken against Plaintiff. Further, Dr. Price denied that MSIC took any action based on Plaintiff's race, sex, or reprisal for protected activity. Lastly, Mr. Asquith testified that race, sex and reprisal for protected activity did not play or a part in any disciplinary action, but rather Plaintiff's conduct was the reason for his removal.

Secondly, Plaintiff, in support of his pretext argument, proffered inadmissible evidence and mere argument. Most of Plaintiff's assertions were in narrative form with no supporting citations as required by Fed. R. Civ. P. 56 and this court's Exhibit A to the Scheduling Order (Doc. 20). "[S]elf-serving statements of fact in a party's brief, not in proper affidavit form, may not be considered in determining if a genuine issue of material fact exists." Mays v. United States Postal Service, 928 F. Supp. 1552, 1566 (M.D. Ala. 1996). Plaintiff cannot rest on his pleadings and survive summary judgment. Federal Rule of Civil Procedure 56(e) states in part that "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

Plaintiff proffered an unsworn statement from a now dead witness as evidence of pretext.

23

Mr. Harold Harris' "affidavit," submitted by Plaintiff, did not state that Mr. Harris made the statement with personal knowledge, and it was not notarized. Nothing verified that the signature on the document was that of Mr. Harris. In addition to these technical difficulties with Mr. Harris' affidavit, the statement contradicts previous sworn testimony given by Mr. Harris. Thus, the court finds this document insufficient to show pretext.

Even more troublesome, in response to Defendant's Motion for Summary Judgment (Doc. 27-2), Plaintiff submitted a stack of unidentified, unverified documents and portions of documents, labeled "PEX" 1-33 and then "EX" 1-11 and an "Index" that is not an index but a compilation of documents. Many of the documents are Plaintiff's own statements in various formats. Plaintiff cannot create a genuine issue of fact by presenting his subjective opinions as purported evidence of pretext. "[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered...extensive evidence of legitimate non-discriminatory reasons for its actions." Young v. General Foods Corp., 840 F.2d 825, 830 (11th Cir. 1988)(citing Grigsby v. Reynolds Metals, Co., 821 F.2d 590, 597 (11th Cir. 1987)).

At the March 21, 2003, hearing, this court gave Plaintiff ample opportunity to show the court any admissible evidence in support of his arguments. The court asked Plaintiff to show evidence in support of his arguments that he was discriminated against, and Plaintiff informed the court that he did not have evidence, but that he had certain individuals "picked down as witnesses." The court then informed Plaintiff that merely having individuals listed as witnesses and failing to submit proper affidavits is insufficient under the Federal Rules of Civil Procedure to respond to a motion for summary judgment.

24

The primary concern of this court is that all litigants receive equal justice under the law. Plaintiff's status as a *pro se* litigant only strengthens this court's resolve to ensure fairness among the parties. However, all parties, whether *pro se* or represented by admitted attorneys, must abide by the rules of this court and the Federal Rules of Civil Procedure. Thus, this court finds that Plaintiff failed to show by any proper evidence that Defendant's reasons for removing Plaintiff from federal service were pretext for unlawful discrimination.

Because this court finds that Defendant articulated legitimate, non-discriminatory reasons for Plaintiff's removal and because this court finds that Plaintiff has not, through admissible evidence, shown pretext, this court hereby GRANTS Defendant's Motion for Summary Judgment (Doc. 27-2).

### Conclusion

The court, having considered the briefs and evidentiary submissions and having heard oral arguments in open court on this motion, finds that Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 27) is hereby GRANTED as to all claims Plaintiff raised in this action. This action and all of Plaintiff's claims are hereby DISMISSED WITH PREJUDICE, with each party to bear his own costs. A separate order that summarizes the decisions of this memorandum opinion has been filed simultaneously with the clerk of court.

DONE and ORDERED this ___ day of August, 2003.

KARON O. BOWDRE
United States District Judge

25